UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ERIC J. MCCANTS,

                    Plaintiff,                          Case No. 2:22-cv-53

v.                                                      Honorable Maarten Vermaat

HEIDI WASHINGTON et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the

Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. Plaintiff previously sought

and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c)

and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters

in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Huss, Allen, Morgan, and Leech. Plaintiff's Eighth Amendment claims against Defendants James and Christy remain. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 1, PageID.12.)

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Washington and the following personnel at MBP: Warden Erica Huss, Officers Unknown Allen, Unknown Leech, and Unknown Morgan, and Nurses Brenda James and Unknown Christy.

Plaintiff alleges that he has been classified and diagnosed "as a prisoner with a 'major mental disorder' (MMD)." (ECF No. 1, PageID.7.) "It is well documented and recorded that [Plaintiff] suffers a mental disorder since the age of 7, and that Defendant[s] knew at certain intervals [he] repeatedly slip[s] into an episode." (*Id.*) During the relevant time, Plaintiff was a housing porter. (*Id.*)

Plaintiff claims that in mid-September of 2020, Defendants Washington and Huss transferred a number of prisoners who had been diagnosed with COVID-19 to MBP. (*Id.*) He avers that they did not "separate the tested positive prisoner[s] from the tested negative prisoner[s]." (*Id.*) At the time, Plaintiff had tested negative for COVID-19. (*Id.*) Plaintiff avers that the "failure to adhere to safety protocol directly put [him] into a paranoid state of mind." (*Id.*)

Plaintiff avers that Defendants Washington and Huss "housed prisoner[s] with COVID-19 with prisoner[s] who did not have COVID-19 or symptomatic signs of COVID-19." (*Id.*) Those who had tested positive, however, still used the same telephones, JPay machine, store machine, and showers. (*Id.*) "Prison staff wore mask[s] and protective gear to protect themselves but [Plaintiff] and other prisoner[s] were treated as 'lab rats.'" (*Id.*) Plaintiff could "see prison staff deliberately [were] committing a substantial risk and deliberate indifference." (*Id.*) This sent him "into a depression and built up anxiety due to the fear of catching COVID-19." (*Id.*)

On October 3, 2020, Defendant Morgan came and ordered Plaintiff to work. (*Id.*, PageID.7–8.) Plaintiff refused because of the lack of protective gear and told Defendant Morgan that his depression and anxiety were "out of control." (*Id.*, PageID.8.) Defendant Morgan responded that he was giving Plaintiff a direct order. (*Id.*) Plaintiff "still refused to come out and

4

make any contact with prisoner[s] with COVID." (*Id.*) He contends that Defendant Morgan discriminated against him because he did not "order non-MMD prisoner[s] to work." (*Id.*) Plaintiff alleges that Defendant Morgan knew that Plaintiff "suffered a mental illness because he escort[ed] the prison nurses every day to [Plaintiff's] cell to dispense psychiatric medications." (*Id.*)

On October 4, 2020, Defendant Allen came to Plaintiff's cell and shouted, "I don't care about what you say is a safety risk and all this mental stuff, if you don't come out and pass cleaning supplies [I'm going to] have to put you in D-block ('ad seg'), maybe a knife is found in your cell, maybe you threatened one of my officers." (*Id.*) Plaintiff claims that his earliest release date is within two years and that being charged with possession of a knife would lead to "a new charge plus the 4th habitual." (*Id.*) Plaintiff claims that Defendant Allen was essentially threatening to give him "another 20 years or life sentence for refusing to pass out cleaning supplies to COVID-19 prisoner[s] without being provided the necessary protective gear worn by the officers." (*Id.*)

On October 5, 2020, Plaintiff was watching television when Defendant Leech came to his cell. (*Id.*) Defendant Leech said, "We contacted your psychologist case manager and he said you [were] good to work." (*Id.*) Plaintiff responded, "I am watching [television] right now to try and subside hearing voices, man . . . . y'all know all these prisoner[s] are sick, why y'all keep trying to get me sick too?" (*Id.*) Defendant Leech stated, "You damn re****, f*** all that! You work when we tell you!" (*Id.*) Plaintiff said, "Y'all have 4 other porters why are y'all focus[ed] on me?" (*Id.*, PageID8–9.) Defendant Leech replied, "Ad seg or work." (*Id.*, PageID.9.) Plaintiff "then came out to work due to threats of 'ad seg' and 'potentially new charges.'" (*Id.*)

On October 8, 2020, Plaintiff "became so dizzy from headaches as he laid in bed [that he] began to spit up blood." (*Id.*) He "believed he was dying and despite complaining to staff he was totally ignored." (*Id.*) On October 14, 2020, Plaintiff began to experience chills, headaches, cold

sweats, and loss of appetite. (*Id.*) He immediately reported these symptoms to staff and was told that the nurse would make rounds. (*Id.*) Plaintiff alleges that the nurse, Defendant Christy, "moved 'tip-toeish,' 'sneaky' and 'unannounced' trying to avoid dealing with so many prisoner[s] who [contracted] the virus or showed symptoms." (*Id.*) Staff would then say, "she [Defendant Christy] said to send a kite." (*Id.*) On October 17, 2020, Plaintiff tested positive for COVID-19. (*Id.*)

On October 19, 2020, Defendant James stopped at Plaintiff's cell while making rounds to check his blood pressure. (*Id.*) Plaintiff's blood pressure and fever were "extremely high." (*Id.*) Plaintiff "complained about pain and asked for pain medication such as 'Tylenol[] or 'Motrin[]' or vitamins to subside headaches and body aches." (*Id.*) Defendant James responded, "not [my] problem," and walked away. (*Id.*)

The next day, Defendant Christy stopped at Plaintiff's cell during rounds. (*Id.*, PageID.10.) Plaintiff complained about severe headaches, shortness of breath, spitting up blood, chills, and cold sweats. (*Id.*) He told Defendant Christy that he felt like he was dying and asked to be taken to the hospital. (*Id.*) Defendant Christy responded, "Then we'll have to take everybody to the hospital." (*Id.*) Plaintiff avers that at no time did Defendant Christy provide any medication for his symptoms. (*Id.*) Plaintiff claims that he "struggled to survive for life for more than 3 weeks." (*Id.*) He was "left in a cell unattended" and Defendants "treated [him] as if [he] was too mentally disable[d] to write grievance[s] and follow up on the way [he] had been treated." (*Id.*)

Plaintiff claims that Defendants Washington and Huss "knew of the risk, and generated a memorandum[,] but did not follow up on oversights or operations of the memorandum in practice." (*Id.*) He alleges that when Defendant Huss made rounds on D-block, she wore safety gear. (*Id.*) He claims that Defendant Huss "knew of the risk but failed to protect [him from] the risk." (*Id.*) According to Plaintiff, Defendants Washington and Huss "failed to appropriately discharge their

supervisory duties by encouraging and authoriz[ing] the negative prisoner[s] not to be separated from the tested positive prisoner[s]." (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his Eighth Amendment rights, as well as his rights under the ADA. (*Id.*, PageID.11.) Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.12.)

## II.    Motion to Appoint Counsel

Plaintiff seeks the appointment of counsel in this matter, stating that another inmate assisted him in preparing his complaint. (*Id.*) Plaintiff argues that there are complicated issues involved that require "professional counsel to effectively pursue due to investigation and discovery." (*Id.*) He also avers that he requires counsel because of his mental health issues. (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's request for appointment of counsel.

### III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A.     Eighth Amendment Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff raises various Eighth Amendment claim against Defendants. Specifically, he contends that Defendants Washington and Huss violated his Eighth Amendment rights by "encourage[ing] deliberate indifference to attract COVID-19" and by failing to authorize "protective equipment for prisoner porters." (ECF No. 1, PageID.11.) He alleges further that Defendants Morgan, Allen, and Leech violated his Eighth Amendment rights by forcing him to "mingle with positive tested prisoner[s] with COVID-19." (*Id.*) Finally, Plaintiff contends that Defendants James and Christy failed to provide adequate medical care while Plaintiff was suffering from COVID-19. (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Claims Regarding the Response to the COVID-19 Pandemic

As noted *supra*, Plaintiff contends that Defendants Washington, Huss, Allen, Morgan, and Leech incarcerated him under conditions that put him at risk of contracting COVID-19, and that he ultimately did contract COVID-19.

### a. Objective Prong

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death.  The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

The Sixth Circuit has determined that a plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus, certainly at least with respect to medically vulnerable inmates per *Wilson*, and possibly with respect to inmates who are not otherwise medically vulnerable. Here, Plaintiff suggests that he is medically vulnerable because he experienced heightened depression and anxiety because of his fear of catching COVID-19. (ECF No. 1, PageID.7.) Moreover, Plaintiff alleges conditions that could facilitate COVID-19 transmission within MBP. The Court therefore concludes that, at this stage of the proceedings, Plaintiff alleges facts sufficient to satisfy the objective prong of the deliberate indifference test.

### b.    Subjective Prong

The Sixth Circuit went on in *Wilson* to address the subjective prong of an Eighth Amendment claim, noting that the pertinent question was whether the BOP's actions demonstrated deliberate indifference to the serious risk of harm posed by COVID-19 in the prison:

> There is no question that the BOP was aware of and understood the potential risk of serious harm to inmates at Elkton through exposure to the COVID-19 virus. As of April 22, fifty-nine inmates and forty-six staff members tested positive for COVID-19, and six inmates had died. "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). The BOP acknowledged the risk from COVID-

11

19 and implemented a six-phase plan to mitigate the risk of COVID-19 spreading at Elton.

The key inquiry is whether the BOP "responded reasonably to th[is] risk." *Farmer*, 511 U.S. at 844. The BOP contends that it has acted "assiduously to protect inmates from the risks of COVID-19, to the extent possible." CA6 R. 35, Appellant Br., PageID 42. These actions include

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id.* at 42–43.

The BOP argues that these actions show it has responded reasonably to the risk posed by COVID-19 and that the conditions at Elton cannot be found to violate the Eighth Amendment. We agree.

Here, while the harm imposed by COVID-19 on inmates at Elton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks. The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.* at 840–41.

In its decision, the Sixth Circuit recognized that other Sixth Circuit decisions have found

similar responses by prison officials and medical personnel, such as cleaning cells, quarantining

infected inmates, and distributing information about a disease in an effort to prevent spread, to be

reasonable. *Id.* at 841 (citing *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010);

*Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448–49 (6th Cir. 2014); *Harrison v. Ash*, 539 F.3d 510,

519–20 (6th Cir. 2008); *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018)). The *Wilson* Court

also noted that other circuits had concluded that similar actions by prison officials demonstrated a

reasonable response to the risk posed by COVID-19:

> In *Swain* [*v. Junior*], the Eleventh Circuit granted a stay of a preliminary injunction
> pending appeal on state inmates' Eighth Amendment claims. 958 F.3d [1081,] 1085
> [(11th Cir. 2020) (per curiam)]. The Eleventh Circuit held that "the inability to take
> a positive action likely does not constitute 'a state of mind more blameworthy than
> negligence,'" and "the evidence supports that [Metro West Detention Center
> ("MWDC") is] taking the risk of COVID-19 seriously." *Id.* at 1088–90 (citation
> omitted). In response to the pandemic in early March, MWDC began "cancelling
> inmate visitation; screening arrestees, inmates, and staff; and advising staff of use
> of protective equipment and sanitation practices" and, after reviewing further CDC
> guidance, began "daily temperature screenings of all persons entering Metro West,
> establish[ed] a 'COVID-19 Incident Command Center and Response Line' to track
> testing and identify close contacts with the virus, develop[ed] a social hygiene
> campaign, and mandate[d] that staff and inmates wear protective masks at all
> times." *Id.* at 1085–86. The Eleventh Circuit held that, because MWDC "adopted
> extensive safety measures such as increasing screening, providing protective
> equipment, adopting [physical] distancing when possible, quarantining
> symptomatic inmates, and enhancing cleaning procedures," MWDC's actions
> likely did not amount to deliberate indifference. *Id.* at 1090.
>
> Similarly, the Fifth Circuit granted stays of two preliminary injunctions in
> *Valentine* [*v. Collier*, 956 F.3d 797 (5th Cir. 2020) (per curiam),] and *Marlowe* [*v.
> LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)].
> In *Valentine*, inmates at Texas's Wallace Pack Unit filed a class action suit against
> the Texas Department of Criminal Justice ("TDCJ") alleging violations of the
> Eighth Amendment. 956 F.3d at 799. In response to the COVID-19 pandemic,
> TDCJ had taken preventative measures such as providing "access to soap, tissues,
> gloves, [and] masks," implementing "regular cleaning," "quarantin[ing] of new
> prisoners," and ensuring "[physical] distancing during transport." *Id.* at 802. The
> Fifth Circuit determined that the district court applied the wrong legal standard by
> "collaps[ing] the objective and subjective components of the Eighth Amendment
> inquiry" by "treating inadequate measures as dispositive of the Defendants' mental
> state" under the subjective prong and held that "accounting for the protective
> measures TDCJ has taken" the plaintiffs had not shown deliberate indifference. *Id.*
> at 802–03. In *Marlow*e, the Fifth Circuit relied on its reasoning in *Valentine* and
> again reiterated that there was "little basis for concluding that [the correctional
> center's] mitigation efforts," which included "providing prisoners with disinfectant
> spray and two cloth masks[,] . . . limiting the number of prisoners in the infirmary

lobby[,] and painting markers on walkways to promote [physical] distancing," were insufficient. 2020 WL 2043425, at *2–3.

*Wilson*, 961 F.3d at 841–42.

After reviewing the cases, the *Wilson* Court held that even if the BOP's response to COVID-19 was inadequate, it took many affirmative actions, not only to treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19. The Court held that because the BOP had neither disregarded a known risk nor failed to take steps to address the risk, it did not act with deliberate indifference in violation of the Eighth Amendment. *Id.* at 843–44.

In addition, in *Cameron v. Bouchard,* 818 F. App'x 393 (6th Cir. 2020), the Court relied on *Wilson* to find that pretrial detainees in the Oakland County Jail were unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims. The plaintiffs in *Cameron* claimed that jail officials were deliberately indifferent to the substantial risk of harm posed by COVID-19 at the jail. The district court initially granted a preliminary injunction requiring the defendants to "(1) provide all [j]ail inmates with access to certain protective measures and medical care intended to limit exposure, limit transmission, and/or treat COVID-19, and (2) provide the district court and Plaintiffs' counsel with a list of medically vulnerable inmates within three business days." *Id.* at 394. However, following the decision in *Wilson*, the Court granted the defendants' renewed emergency motion to stay the preliminary injunction, finding that the preventative measures taken by the defendants were similar to those taken by officials in *Wilson* and, thus, were a reasonable response to the threat posed by COVID-19 to the plaintiffs. *Id.* at 395. Subsequently, in an unpublished opinion issued on July 9, 2020, the Sixth Circuit vacated the injunction. *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020).

During March of 2020, Governor Whitmer issued Executive Order 2020-4, announcing that the Michigan Department of Health and Human Services had identified the first two presumptive-positive cases of COVID-19 in Michigan. The MDOC did not stand idly by. Defendant Washington issued a series of Director's Office Memorandums (DOMs) addressing the risks posed by the pandemic and the MDOC's efforts to mitigate that risk.

Plaintiff does not dispute that Defendants Washington and Huss took steps to mitigate the risks posed by the COVID-19 pandemic.  Plaintiff makes specific reference to infection prevention protocols included in DOM 2020-30R6.  (Compl., ECF No. 1, PageID.7.)  That DOM called for the wearing of personal protective equipment, screening of individuals before entering a facility, social distancing, the creation of isolation and quarantine areas—as resources permit—for prisoners who tested positive and prisoners under investigation for having COVID-19, isolation of the personal property of positive prisoners and prisoners under investigation, limitations of visitation and programs, the use of alcohol-based sanitizers and wipes by staff, limited transfers and cell moves, testing, adequate soap for hygiene and cleanliness, the use of bleach under staff supervision, no prisoner co-pays for COVID-19 testing and management, and remote work by staff when possible. MDOC DOM 2020-30R6, available at https://www.michigan.gov/documents/corrections/dom_2020-30r6_final_700917_7.pdf (last visited Apr. 17, 2022)

### i.    Defendants Washington and Huss

Plaintiff suggests that Defendants Washington and Huss failed to "appropriately discharge [their] supervisory duties" in violation of his Eighth Amendment rights. (ECF No. 1, PageID.11.) While unclear, it appears that Plaintiff intends to hold them responsible for the actions of the other named Defendants because they are their superiors. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat

superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Here, Plaintiff fails to allege any facts showing that Defendants Washington and Huss encouraged or conduced the conduct of the other named Defendants, or authorized, approved, or knowingly acquiesced in the conduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's supervisory liability claims against Defendants Washington and Huss are premised on nothing more than respondeat superior and, therefore, will be dismissed.

Plaintiff also suggests that Defendants Washington and Huss "encouraged deliberate indifference to attract COVID-19." (ECF No. 1, PageID.11.) He avers that they were responsible for transferring a number of prisoners who had previously tested positive for COVID-19 to MBP. (*Id.*, PageID.7.) Plaintiff, however, fails to allege any facts suggesting that Defendants Washington and Huss were personally aware that those inmates had tested positive for COVID-19 before transferring to MBP. He fails to allege facts that Defendants personally reviewed these inmates' medical records prior to the transfer. Plaintiff has alleged facts suggesting only the mere possibility that Defendants Washington and Huss violated the Eighth Amendment. His allegations regarding the transfer of inmates, therefore, fail to state a claim. *See Iqbal*, 556 U.S. at 678.

Plaintiff also contends that Defendants Washington and Huss failed to authorize protective equipment for prisoner porters. (ECF No. 1, PageID.11.) DOM 2020-30R6 provided that "all individuals in a correctional facility or MDOC office building shall always wear a mask or facial covering." *See* MDOC DOM 2020-30R6, https://www.michigan.gov/documents/corrections/dom_2020-30r6_final_700917_7.pdf (last visited Apr. 17, 2022). Staff members working in certain capacities were also required to wear personal protective equipment (PPE), including an N95 or other mask, gown, eye protection, and powder-free nitrile gloves. *Id.* Here, Plaintiff does not allege that he lacked *any* mask while conducting his duties as a porter. Rather, it appears that he wished to receive the same PPE used by staff members. Plaintiff, however, does not allege that he faced an increased risk of contracting COVID-19 when using the mask provided to him, nor does he allege facts demonstrating that Defendants Washington and Huss knew of and disregarded any such risk. In sum, Plaintiff fails to allege facts plausibly suggesting that Defendants Washington and Huss knew of and disregarded an excessive risk to Plaintiff's health or safety.

### ii.    Defendants Morgan, Allen, and Leech

Plaintiff alleges that Defendants Morgan, Allen, and Leech violated his Eighth Amendment rights by forcing him to mingle with inmates who had tested positive for COVID-19. (ECF No. 1, PageID.11.) Plaintiff, however, does not allege any facts from which the Court could plausibly infer that Defendants Morgan, Allen, and Leech deliberately forced him to mingle with inmate who had tested positive for COVID-19. While Plaintiff alleges that these officers ordered him to complete his duties as a porter during the relevant time, Plaintiff alleges no facts suggesting that those duties caused him to "mingle" with inmates who had tested positive. Plaintiff has alleged facts suggesting only the mere possibility that Defendants Morgan, Allen, and Leech violated the Eighth Amendment. *See Iqbal*, 556 U.S. at 678.

In sum, while the Court is sympathetic to Plaintiff's concerns about the COVID-19 virus and the fact that he contracted the virus, his claims are entirely based upon speculation. The MDOC and Defendants Washington and Huss have promulgated numerous policies to address the risk posed to inmates by COVID-19, and Plaintiff's allegations suggest that Defendants expected their subordinates to enforce those policies. Plaintiff has failed to allege facts demonstrating that Defendants Washington, Huss, Morgan, Allen, and Leech were deliberately indifferent to his health and safety. At most, with the benefit of hindsight, they may have been negligent when they transferred the prisoners to MBP and when they ordered Plaintiff to still perform his duties as a porter. Allegations of negligence, however, fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff's Eighth Amendment claims against Defendants Washington, Huss, Morgan, Allen, and Leech will, therefore, be dismissed.

2.      **Defendants James and Christy**

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed

tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Here, Plaintiff contends that Defendants Christy and James refused to provide any medical treatment, including pain medication, for his symptoms when he was suffering from COVID-19. Plaintiff contends that his complaints about his symptoms were ignored and that he suffered those symptoms for three weeks. (ECF No. 1, PageID.9–10.) Given Plaintiff's allegations, he has set forth plausible Eighth Amendment claims against Defendants James and Christy at this time.

**B.      Claims Pursuant to the ADA**

Plaintiff also contends that Defendants Washington, Huss, Morgan, Allen, and Leech violated his rights under the ADA by failing to accommodate his mental disability. Specifically, Plaintiff avers that Defendants Washington and Huss failed to provide PPE for prisoner porters and that Defendants Morgan, Allen, and Leech forced him to work despite the fact that he was experiencing a "decompensation episode." (ECF No. 1, PageID.11.)

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). Discrimination against a "qualified individual on the basis of a disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is

an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

Beyond his conclusory allegations, Plaintiff has not set forth how the provision of additional PPE and being excused from work were necessary accommodations for his disability. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008). Moreover, Plaintiff has alleged no facts from which the Court could conclude that Defendants Washington and Huss knew or had reason to know of his mental disability and that Plaintiff requested an accommodation in the form of receiving PPE. Plaintiff's vague allegations simply do not permit the Court to infer violations of the ADA. Accordingly, his ADA claims will be dismissed.

### C.    Equal Protection Claims

Plaintiff vaguely states that Defendants Morgan, Allen, and Leech discriminated against him because he had a mental disability.  (ECF No. 1, PageID.11.) Plaintiff states that Defendant Morgan did not order prisoners without MMDs to work. (ECF No. 1, PageID.8.) Construed liberally, Plaintiff's allegations might be an attempt to state a claim for violation of his equal protection rights.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of*

*Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's allegations neither implicate a fundamental right nor state that he is a member of a suspect class. Plaintiff instead appears to contend that he has been treated differently from others similarly situated without any rational basis for the difference.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to

similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff has failed to allege any facts to demonstrate that comparators were similar in all relevant respects. Plaintiff offers only a statement that Defendant Morgan "did not order non-MMD prisoner[]s to work . . . ." (Compl., ECF No. 1, PageID.8.) Plaintiff's allegation is wholly conclusory.  He does not allege any actual facts regarding another instance of Defendant Morgan ordering or failing to order another prisoner to perform his porter duties and Plaintiff certainly does not allege how he is privy to the mental health status of every prison worker with whom Defendant Morgan interacts.  Plaintiff's conclusory allegation does not suffice. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Because Plaintiff has not alleged facts that support an inference that any Defendant treated him disparately as compared to others similarly situated, he cannot maintain an equal protection claim. *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Huss, Allen, Leech, and Morgan will be dismissed for

24

failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Plaintiff's Eighth Amendment claims against Defendants James and Christy remain in the case.

The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 1, PageID.12.)

An order consistent with this opinion will be entered.


Dated:  April 19, 2022                              /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge